## UNITED STATES v. HADERLEIN.
### Cr. 544 No. 52.

United States District Court
N. D. Illinois, E. D.
Oct. 30, 1953.

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., for government.

Joseph Solon, Chicago, Ill., for defendant.

PERRY, District Judge.

During the course of the trial in this case the Government moved the Court to recess the Court and jury from the usual courtroom to a private residence in the City of Chicago for the purpose of taking the testimony of a witness. The United States Attorney stated that the Government would be unable to prove the charge in the indictment against this defendant before the Court and jury without the testimony of said witness, who was in the indictment of defendant on trial alleged to be a co-conspirator with the defendant. Counsel for the Government further represented that they had been taken by surprise when they were informed by the attending physician of said witness that the health of the witness would not permit his attendance at the trial. This occurred after the jury was chosen and sworn in. Counsel for the witness in question appeared in open court and confirmed this representation.

The Court recalled that this particular witness became seriously ill shortly after the indictment against the defendant was returned and thereafter he had undergone major surgery. This unforeseen difficulty prevented an earlier trial of this cause. The Government's representations were supported by the certificate of the attending physician. The Court on its own motion ordered the examination of the attending physician of the witness as to the competency and ability of the witness. The attending doctor testified that the witness was able to give evidence in his own home but that his illness was of such nature that removal would seriously endanger his life and would cause considerable suffering. The doctor further testified that the wit-

ness could be subjected to an examination for a period of approximately one hour. He further stated that the witness was in every way competent but that he was in constant pain which was being controlled by the regular administration of drugs. In the doctor's opinion this medication could not in any way effect his testifying truthfully. On cross-examination, however, the doctor admitted that it might have some effect upon his memory.

Counsel for the defendant objected vigorously to this motion on the ground that the testimony of the attending physician cast considerable doubt upon the reliability and stability of this witness; that his present health condition as described by this doctor would curtail cross-examination to a point where the defendant's constitutional right would be violated. Counsel for the defendant informed the Court that he expected to prove by this witness on cross-examination that any testimony given by him in support of the charges was false; that in view of the health of the witness, the defense could not indulge in any vigorous or lengthy cross-examination; and that such limitation therefore would be highly prejudicial to the defendant. The defense also emphasized the fact that no provision for such procedure exists in the statutes and that no precedents had been presented to the Courts for such action by the Court.

■ The Court gave careful consideration to the claims of counsel for both the Government and the defendant. It considered at length the testimony of the attending physician as to the health and as to the emotional and mental condition of the witness. The Court is aware of the basic constitutional rights of every defendant to confront witnesses personally before the jury and that no deposition can be read in court against a defendant in a criminal case. Justice to both the Government and the defendant demands that the testimony of this witness be taken under all possible circumstances.

■ The Court finds no statutory authority for the requested procedure. No reported precedent for such procedure has been presented to the Court. However, the statute authorizes this Court to conduct hearings anywhere in the Northern District of Illinois, 28 U.S.C.A. § 141. The primary concern of a Court is the achievement of ultimate justice. It is the view of this Court that the time and place of such hearing is a matter of judicial discretion which is to be guided by the basic aim of our judicial system.

■ After due consideration of all the arguments and testimony, it is ordered that the trial re-convene at the residence of this witness in the City of Chicago and the marshal is ordered to transport the Court and jury to said residence. Pursuant to this order the Court, the jury, the marshal, clerk, court reporter and counsel for all parties and the defendant were transported to 1020 West Belden Avenue, Chicago, for the purpose of taking the testimony of said witness and the Court then and there resumed its session.

At the conclusion of all the testimony on behalf of the Government and the defendant, the defendant has moved for acquittal on the ground that the Government failed to present any evidence which could support a verdict of guilty beyond a reasonable doubt. The Court is of the opinion that this motion should be granted for the reasons hereinafter assigned.

The testimony of George Iberle was the only material evidence offered against the defendant Postmaster. On direct examination the witness testified that he had written a letter to the defendant requesting the promotion for a postal employee, one Paul Eble, from the position of postal clerk to that of foreman; that he received no immediate reply to this letter; that he had discussed this matter with the defendant on one or two occasions; that the defendant informed him that there were few vacancies and many applicants and that "it would take some money to get that promotion through." This witness further testified that he obtained $400 from the father of Paul Eble, and gave it to the defendant; that shortly thereafter Paul Eble was promoted

from postal clerk to foreman which resulted in an annual increase of $500; that he received a letter from the defendant confirming the promotion. The two aforementioned letters were introduced into evidence.

On cross-examination this witness stated that he testified under oath before the Grand Jury to the receipt of $400 from Paul Eble's father and that he retained the money. He stated that he had intentions of returning it to Eble's father, but had not done so. In his testimony before the Grand Jury, he mentioned no delivery of this money to the defendant. During further cross-examination this witness admitted that after his first appearance before the federal Grand Jury postal inspectors visited him on one or two occasions and discussed his naturalization status. The witness testified in substance that he was told by the postal inspectors that he had sworn falsely and his citizenship could be revoked. According to his testimony in court the witness thereupon returned voluntarily before the Grand Jury because he desired to tell the truth. It should be noted, however, that his testimony shows that he returned with the postal inspectors and that upon his second appearance before the Grand Jury he testified under oath that he had obtained $400 from the father of Paul Eble and delivered it to the defendant and that eventually Paul Eble was promoted.

During the course of the testimony at the trial, the witness admitted that he was disturbed by the possibility of difficulties with the Immigration authorities. According to his testimony before the Court his first testimony before the first Grand Jury was given in order to protect the defendant, whom he described as a friend of long standing. This witness further testified that he has been active as a secretary of a German-American organization for many years and in that capacity had obtained the defendant for speaking engagements on many occasions, especially when the defendant was seeking public office by election. The witness also admitted that he sought favors for members of the society of which he was secretary from individuals in public office, such as the defendant. He successfully sought the advancement of another postal employee from the defendant but denied that he received any money in this instance because the promotion went through for other reasons. At one point in his testimony, the witness admitted the receipt of gifts from individuals for whom he had performed such favors; later he denied that he had received any such gifts. The witness further testified that he had not been indicted by the federal Grand Jury because of his actions before that body. Neither had he been indicted for participation in the events for which the defendant is on trial.

It is the view of this Court that the sole testimony of the alleged conspirator, who testifies that he has been guilty of perjury by giving contradictory testimony before the Grand Jury under oath, does not constitute such evidence as would warrant a jury or a court finding the defendant guilty of an offense beyond a reasonable doubt. Such is the state of the record in the instant case. There is no corroboration of the testimony of the alleged conspirator, who confesses that he was guilty of perjury concerning the very testimony which he gave before the Court. As a matter of law, therefore, there is no evidence to go to the jury.

This Court notes particularly the course of events which occurred after the witness' first appearance before the Grand Jury. It refers specifically to the testimony regarding the visits by the postal inspectors, the discussion of the witness' immigration status, the return of the witness before the Grand Jury in the company of these inspectors and his contradictory testimony before that body as to the disposition of the $400. It is significant that no postal inspector or any other witness was presented at the trial to controvert the testimony of George Iberle in these respects. The Court is left no choice except to assume the truth of this witness' testimony relative to the discussion concerning the

cancellation of his certificate of naturalization on the ground of perjury, especially since it was elicited from him on cross-examination. The reliability of this testimony as the sole basis for conviction of a defendant needs no further comment. If this type of testimony alone and uncorroborated should be held to convict a person of crime beyond a reasonable doubt such ruling would represent a new milestone in Anglo-American jurisprudence. It would well lead in the direction of a police state in open defiance of the traditional personal safeguards of our federal constitution.